Sharon R. RENAUD

v.

SIGMA–ALDRICH CORPORATION et al.

No. 93–688–M.P.

Supreme Court of Rhode Island.

Aug. 10, 1995.

Kathleen A. Golini, Ronald J. Resmini, Providence, for plaintiff.

Gerald C. DeMaria, Rajaram Suryanarayan, Patrick B. Landers, Higgins, Cavanagh & Cooney, Providence, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari wherein defendant Fisher Scientific Company (Fisher), seeks review of the

Superior Court's denial of its motion to dismiss. Fisher moved to dismiss the plaintiff's complaint (with respect to Fisher) on the ground that it was barred by the applicable statute of limitations. We grant the petition and quash the order of the Superior Court. The facts insofar as pertinent to this petition are as follows.

On February 3, 1988, plaintiff, Sharon R. Renaud, was injured as a result of inhaling fumes from acetic acid that had spilled at her place of employment, Landmark Medical Center (Landmark). Within hours of her exposure to the acid fumes, she began to feel dizzy and nauseated and experienced breathing difficulty. Later that afternoon and the following day plaintiff sought treatment at the Woonsocket Hospital Emergency Room and on February 5, 1988 she was admitted to the hospital.

On January 30, 1991, plaintiff initiated a product-liability action against Sigma–Aldrich Corporation (Sigma–Aldrich). The complaint alleged that Sigma–Aldrich had manufactured and supplied to Landmark the container holding the acetic acid involved in the incident wherein plaintiff was injured. The complaint alleged that Sigma–Aldrich was negligent in designing, constructing, inspecting, marketing, assembling, and distributing the container. It also alleged that Sigma–Aldrich breached its implied warranty of marketability, that it knew or should have known that the container was dangerous and defective, and that it negligently failed to warn plaintiff of the dangerous condition. There was no allegation that the acetic acid itself was defective in any manner.

During discovery, plaintiff learned that Sigma Chemical Company (Sigma Chemical) was a subsidiary of the parent company Sigma–Aldrich. The plaintiff thereafter moved to amend the complaint to add Sigma Chemical as a party defendant. The motion was granted, and an amended complaint was filed on September 12, 1992, naming Sigma Chemical as a party defendant.

On July 28, 1992, almost four and one-half years after the acid spill that precipitated this lawsuit, defendant Sigma–Aldrich deposed the keeper of records of Landmark's purchasing department. Pursuant to a defense subpoena, she produced invoices of Landmark's purchase orders of acetic acid. These records revealed that Fisher, and not Sigma–Aldrich or Sigma Chemical, had supplied the container of acetic acid that is the subject of this litigation. It was at this time that plaintiff first learned that Fisher had manufactured and supplied the container of acetic acid. Approximately five and one-half months later, plaintiff moved to amend the complaint a second time, this time adding Fisher as a defendant. The motion was granted, and a second amended complaint was filed in February 1993 adding Fisher as a party defendant.

On April 15, 1993, Fisher filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.[1] Fisher claimed that the three-year statute of limitations had already expired prior to its being added as a party defendant. The motion justice agreed with Fisher that the applicable statute of limitations was the three-year period set forth in G.L.1956 (1985 Reenactment) § 9–1–14(b), which provides that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." He held, however, that the reasonableness of plaintiff's diligence in investigating potentially liable parties was a question of fact that was not properly determinable by the court on a motion to dismiss. In addition, the motion justice held that even if the court were to find that plaintiff did not exercise reasonable diligence in her investigation, she should nevertheless be permitted to join Fisher as a necessary party pursuant to Rule 19(b) of the Superior Court Rules of Civil Procedure. Fisher's motion to dismiss was therefore denied. Fisher thereafter filed this petition for certiorari, seeking review of the denial of its motion to dismiss. Additional facts will be supplied as needed to deal with specific issues.

1. The defendants Sigma–Aldrich and Sigma Chemical filed a motion for summary judgment that was granted on November 9, 1993. Following the grant of summary judgment to the two Sigma defendants, Fisher was the only remaining defendant in the action.

■ Initially we note that the motion justice was correct in determining that the three-year limitation period set forth in § 9–1–14(b) for commencing actions for "injuries to the person" is the applicable statute of limitations. *See Pirri v. Toledo Scale Corp.*, 619 A.2d 429, 430–31 (R.I.1993) (product-liability suit alleging breach of implied warranty of fitness and merchantability; negligent design, manufacture, and installation; and failure to warn governed by § 9–1–14(b) statute of limitations).[2] The plaintiff does not appear to contest the applicability of § 9–1–14(b) to the instant action, although she does challenge its constitutionality.

## I

■ The plaintiff asserts that she exercised reasonable diligence in her efforts to identify the party that manufactured and supplied the container holding the acetic acid to Landmark. She alleges, however, that her efforts to identify the manufacturer/supplier were frustrated by, inter alia, Landmark employees, who told her that the manufacturer of the container was Sigma Chemical; employees of Landmark's purchasing department, who told her that invoices for the acetic acid were unavailable; and Landmark's workers' compensation insurance carrier, who sent a subrogation notice to Sigma Chemical. Although certain of these contentions were disputed by the Sigma defendants, plaintiff nevertheless claims that she reasonably and detrimentally relied on information obtained from her employer, which misled her into believing Sigma Chemical to be the proper defendant. The plaintiff further suggests that Landmark employees and the two Sigma defendants may have even intentionally concealed the identity of the supplier of the container.

Even if we accept each of plaintiff's allegations as true, they provide no basis for tolling the statute of limitations on a cause of action against Fisher. In order to toll the running of the statute of limitations with respect to Fisher, there would have to be a showing that Fisher, the party asserting the statute-of-limitations defense, attempted by fraud or misrepresentation to conceal the existence of the cause of action. *See* § 9–1–20;[3] *Benner v. J.H. Lynch & Sons, Inc.*, 641 A.2d 332, 337–38 (R.I.1994). The plaintiff does not allege that Fisher in any way attempted to conceal the existence of the cause of action against it. Her claims of concealment are directed at only Landmark and possibly the two Sigma defendants. Consequently plaintiff's allegations, even if accepted as true, cannot serve to toll the statute of limitations on a cause of action against Fisher.

■ Although plaintiff and the motion justice each focused on whether plaintiff exercised reasonable diligence in her efforts to identify the manufacturer/supplier of the container of acetic acid, their concentration on this issue was misplaced. Whether plaintiff had in fact exercised reasonable diligence in attempting to identify the proper defendant was irrelevant to the disposition of Fisher's motion to dismiss. Even if plaintiff had exercised reasonable diligence, no basis existed for tolling the statute of limitations.

■ Generally, "the time of accrual of a cause of action in product-liability cases against a manufacturer is the same as in a negligence action, that is, the time of injury." *Plouffe v. Goodyear Tire & Rubber Co.*, 118 R.I. 288, 293, 373 A.2d 492, 495 (1977); *see also Romano v. Westinghouse Electric Co.*, 114 R.I. 451, 459–60, 336 A.2d 555, 560 (1975). However, in certain narrowly circumscribed factual situations, this court has held that a statute of limitations will not

**2.** General Laws 1956 (1969 Reenactment) § 9–1–13(b), as amended by P.L.1978, ch. 299, § 2, the statute of limitations that had applied to product-liability actions prior to 1984, was held unconstitutional in *Kennedy v. Cumberland Engineering Co.*, 471 A.2d 195 (R.I.1984), because it completely denied a claimant access to the courts after ten years from the date the product was purchased, regardless of the merits of the claim. We held that this statute violated article 1, section 5, of the Rhode Island Constitution.

**3.** Section 9–1–20, states, "Time of accrual of concealed cause of action.—If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him the existence of the cause of such action, said cause of action shall be deemed to accrue against the person so liable therefor at the time when the person entitled to sue thereon shall first discover its existence."

begin to run until an injury or some wrongful conduct should have, in the exercise of reasonable diligence, been discovered. *See, e.g., Anthony v. Abbott Laboratories*, 490 A.2d 43 (R.I.1985); *Lee v. Morin*, 469 A.2d 358 (R.I. 1983); *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968). None of the circumstances in which we have adopted a reasonable-diligence standard, nor the policy reasons for adopting such a standard, are applicable to the instant case.

In *Wilkinson* this court held that a medical-malpractice cause of action accrues when the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered that he or she has been injured as a result of the physician's negligent treatment. This so-called discovery rule was later codified as § 9–1–14.1(b). In commenting on the then-existing statute of limitations applicable to medical-malpractice actions, this court stated:

> "[T]o construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust." *Wilkinson*, 104 R.I. at 238, 243 A.2d at 753.

Similarly in *Lee* we applied this principle to improvements to real property. There we held that the statute of limitations begins to run "when the evidence of injury to property, resulting from the negligent act upon which the action is based, is sufficiently significant to alert the injured party to the possibility of a defect." *Lee*, 469 A.2d at 360.

In *Anthony v. Abbott Laboratories*, we considered § 9–1–14(b)'s application to a drug product-liability action. *Anthony* involved an action by eleven plaintiffs who allegedly suffered physical injuries as a result of exposure to diethylstilbestrol (DES) in utero. The adverse effects of ingestion of DES could take several years and possibly a generation to manifest themselves. In *Anthony*, we held that

"*in a drug product-liability action* where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." (Emphasis added.) 490 A.2d at 46.

We explained that in the case of a drug product, the fact that a person experiences adverse effects from a particular drug ordinarily would not and should not lead him or her to believe that the adverse effects resulted from wrongful conduct on the part of the drug manufacturer. In fact, we noted that the normal reaction would be for one to assume that the adverse result was either an unavoidable risk of treatment, considered acceptable by medical standards, or that it was an unforeseeable consequence beyond anyone's control or responsibility. *Id.* at 47 (citing *Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330, 1337 (D.D.C.1982)). It is not until later, we explained, when the person learns that such adverse effects are not an expected or a predictable consequence of proper treatment that he or she could possibly be aware that a cause of action exists against the drug manufacturer. *Id.* Thus in a drug product-liability action, the statute of limitations is tolled until a plaintiff exercising reasonable diligence should have discovered the *wrongful conduct* of the drug manufacturer. *Anthony* does not stand for the proposition that the statute of limitations is tolled until a plaintiff should have discovered the *identity* of the drug manufacturer.

■ The instant case is readily distinguishable from *Wilkinson*, *Lee*, and *Anthony*. The policy underlying the holdings in *Wilkinson* and *Lee* is that it is fundamentally unfair to foreclose a victim of wrongful conduct from even a possibility of seeking a remedy before the victim could have, in the exercise of reasonable diligence, known that he or she had been injured. Thus the discovery rule concerns the discovery that one has suffered an injury, not the discovery of the identity of the party allegedly responsible for causing the injury. Similarly, in *Anthony*,

we held that it is equally unfair to deny even the possibility of a remedy to a person who, although aware of an injury and also aware that the injury was caused by exposure to a drug, nonetheless could not reasonably have known that the injury was due to wrongful conduct on the part of the drug manufacturer.

In the case at bar, plaintiff was aware that she was injured within hours of her exposure to the acetic acid fumes. She experienced symptoms that caused her to seek emergency medical treatment on the very afternoon of her exposure to those fumes. Unlike *Wilkinson* and *Lee* where the plaintiffs, even if they had used reasonable diligence, could not have discovered that they had suffered an injury until after the applicable statutes of limitations had expired, in the instant case plaintiff knew that she was injured almost simultaneously with the event precipitating the injury. The reasonable-diligence standards and the discovery rules of *Wilkinson* and *Lee* are therefore not applicable to the instant case.

Any reliance by plaintiff upon *Anthony* is similarly misplaced. As we stated in *Benner, supra,* "[W]e must be mindful not to interpret *Anthony* to extend far beyond the facts on which it was based." *Benner,* 641 A.2d at 337. *Anthony* applied only to drug product-liability actions. Here, the complaint is fashioned as a product-liability action with respect to a dangerous and defective container, not as a drug product-liability action. Nowhere does the complaint allege that the acetic acid shipped in the container was in any way defective. Moreover, even if the complaint had alleged that the acetic acid was defective in some manner, as far as we can determine acetic acid is not a drug, at least with respect to the manner in which plaintiff was exposed to its fumes. The reasonable-diligence standard and discovery rule

enunciated in *Anthony*, therefore, have no application to the facts of the instant case.

The policy considerations underlying this court's adoption of a reasonable-diligence standard for discovery of certain types of injuries or wrongful conduct do not apply to the circumstances of this case. We therefore conclude that the issue whether plaintiff exercised reasonable diligence in her efforts to identify the manufacturer/supplier of the container of acetic acid was irrelevant to the disposition of Fisher's motion to dismiss and is equally irrelevant to our disposition of the petition for certiorari.

## II

The plaintiff asserts, and the motion justice concurred, that Fisher is either a necessary or an indispensable party, citing Rule 19(b) of the Superior Court Rules of Civil Procedure. Fisher's motion to dismiss was denied on this basis as well.

The plaintiff and the motion justice misapprehend the purpose of Rule 19(b).[4] Rule 19(b) "is relevant only when persons having an interest in the proceedings are not parties to the action." *Burnham v. Washington Trust Co.,* 446 A.2d 769, 773 (R.I.1982); *see Anderson v. Anderson,* 109 R.I. 204, 283 A.2d 265 (1971), for an in-depth discussion of the application of Rule 19. In the case at bar Fisher is already a party defendant seeking dismissal of the complaint with respect to itself. Rule 19(b) is therefore inapplicable because Fisher is already a party to the action.

## III

The plaintiff asserts that § 9–1–14(b) is unconstitutional in that it is inconsistent with article 1, section 5, of the Rhode Island Constitution, which states,

4. Rule 19 of the Superior Court Rules of Civil Procedure provides in pertinent part:

"Necessary joinder of parties.—

\* \* \*

(b) *Effect of Failure to Join.* When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made

parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them can be acquired only by their consent or voluntary appearance; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

"Entitlement to remedies for injuries and wrongs—Right to justice.—Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

We find this argument to be without merit. It is well settled that legislatures may enact reasonable limits on parties' rights to have their claims adjudicated by the courts. *See, e.g., United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 361, 62 L.Ed.2d 259, 271 (1979); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295, 303 (1975); *Young v. Park,* 116 R.I. 568, 573, 359 A.2d 697, 700 (1976). As we stated in *Kennedy v. Cumberland Engineering Co.,* 471 A.2d 195 (R.I.1984): "[C]learly, art. 1, sec. 5, of the Rhode Island Constitution should not be interpreted to bar the Legislature from enacting any laws that may limit a party from bringing a claim in our courts. * * * Statutes of limitation have been upheld as reasonable legislative determination[s] of when to cut off a plaintiff's right to bring an existing claim." *Id.* at 198 (citing *Johnson,* 421 U.S. at 463–64, 95 S.Ct. at 1722, 44 L.Ed.2d at 303; *Young,* 116 R.I. at 573, 359 A.2d at 700). Unlike § 9–1–13(b), which we held unconstitutional in *Kennedy* because it completely denied court access to product-liability claimants that were injured by a product more than ten years old, § 9–1–14(b), providing that actions for personal injuries shall be commenced within three years after the cause of action accrues, is a reasonable legislative enactment that fully comports with art. 1, sec. 5, of the Rhode Island Constitution.

The plaintiff claims that if the petition for certiorari is granted, she will be left without a remedy, contrary to the provisions of the Rhode Island Constitution. As the United States Supreme Court has stated:

"It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *United States v. Kubrick,* 444 U.S. at 125, 100 S.Ct. at 361, 62 L.Ed.2d at 271.

## CONCLUSION

The plaintiff's cause of action accrued on February 3, 1988, the date she was exposed to acetic acid fumes and was aware that she had been injured as a result. The three-year statute of limitations expired on February 3, 1991. Because the amended complaint was not served upon Fisher until February 1993, the action against Fisher was time barred. The petition for certiorari is granted, and the order denying Fisher's motion to dismiss is quashed. The papers are remanded to the Superior Court with direction to grant Fisher's motion to dismiss.

BOURCIER, J., did not participate.