**Joseph ARNOLD and Claudette Arnold, Plaintiffs,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, Philip Morris Incorporated, and Brown & Williamson Tobacco Corporation, Defendants.**

**C.A. No. 95–399L.**

United States District Court, D. Rhode Island.

Feb. 26, 1997.

Ralph R. Ryan, Pawtucket, RI, Guy J. Wells, E. Greenwich, RI, for Plaintiffs.

David A. Wollin, Adler, Pollock & Sheehan, Providence, RI, Leslie Wharton, Arnold & Porter, Washington, DC, for Deft. Philip Morris.

Michael P. DeFanti, Hinckley, Allen & Snyder, Providence, RI, for Deft. Brown & Williamson.

Joseph A. Kelly, Michael T. Sullivan, Carroll, Kelly & Murphy, Providence, RI, Donald J. Wood, Connarton, Wood & Callahan, Boston, MA, Richard G. Stuhan, Paul D. Koethe, Jones, Day, Reavis & Pogue, Cleveland, OH, for Deft. R.J. Reynolds.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This is a suit to recover damages stemming from plaintiff Joseph Arnold's life-long cigarette use. The matter is presently before the Court on a motion by defendants R.J. Reynolds Tobacco Company,[1] Philip Morris Incorporated, and Brown & Williamson Tobacco Corporation for summary judgment pursuant to Fed.R.Civ.P. 56(c).[2] Because this action is barred by the Rhode Island statute of limitations, that motion is granted.

### I. Background

The facts of this case paint a picture of an addiction far too familiar to today's society. Joseph Arnold, now age 53, began smoking cigarettes sometime between the ages of 13 and 15. Although he has tried to quit on a number of occasions, he has been unable to do so, at times smoking as many as four packs of cigarettes a day. In the early 1970's, Arnold began experiencing breathing problems and a chronic cough, and while he attributed both of these problems to smoking, he was unable to kick the habit. Arnold's respiratory condition deteriorated through the 1980's, and he was ultimately diagnosed with chronic obstructive pulmonary disease ("COPD") in April of 1988. During this entire 30–year period, physicians and others repeatedly warned Arnold of the dangers of cigarette smoking, and when he was diagnosed with COPD, his doctors told him that the disease was caused by his cigarette smoking. To this day, however, Arnold is still unable to stop smoking, even with the certain knowledge that doing so will exacerbate his illness and only hasten his death.

On July 28, 1995, Arnold filed this action against a number of cigarette manufacturers seeking to recover compensatory and punitive damages for the injuries sustained from his cigarette use. Arnold's wife, plaintiff Claudette Arnold, has also filed a claim for the loss of her husband's consortium. The complaint premises recovery on strict products liability, negligence, and defendants' failure to warn, and further alleges that defendants willfully misrepresented the true nature of the health risks associated with cigarette use, further contributing to Arnold's addiction and plaintiffs' injuries.

After conducting some initial discovery, defendants filed the present motion for summary judgment, asserting that this suit is barred by Rhode Island's three-year statute of limitations for personal injury claims, R.I.Gen.Laws § 9–1–14(b). In reply, plaintiffs contend that the discovery rule announced by the Rhode Island Supreme Court in *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968) and *Anthony v. Abbott Laboratories*, 490 A.2d 43 (R.I.1985) should be extended to govern product liability cases based on cigarette use, and maintain that they commenced this action within three years of their discovery of the wrongful conduct of the cigarette companies. After hearing the arguments of counsel, the Court took the matter under advisement. The motion is now in order for decision.

### II. Standard for Decision

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

---

1. R.J. Reynolds Tobacco Company was erroneously named in the complaint as RJR Nabisco. By stipulation, RJR Nabisco was dismissed as a party, and R.J. Reynolds Tobacco Company was substituted in its place.

2. The parties have stipulated to the dismissal of two other tobacco companies originally named as defendants, American Brands, Inc. and Lorillard Tobacco Company.

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996).

## III. Discussion

█ R.I.Gen.Laws § 9–1–14(b) governs all tort suits to recover damages for personal injuries, regardless of the particular legal theory on which relief is sought.[3] *See Pirri v. Toledo Scale Corp.*, 619 A.2d 429, 430–31 (R.I.1993) (personal injury claim based on product liability, negligence, implied warranty, and failure to warn governed by § 9–1–14(b)). That section provides that all claims for personal injuries must be filed within three years of the accrual of the cause of action.[4] The dispute in this case centers on when the cause of action accrued, and whether defendants concealed the existence of the cause of action so as to toll the running of the limitations period.

█ As a general rule, under Rhode Island law a cause of action for personal injury accrues at the time of injury. *See Renaud v. Sigma–Aldrich Corp.*, 662 A.2d 711, 714 (R.I. 1995). However, the Rhode Island Supreme Court has recognized that for some factual settings, the operation of a "discovery rule" serves to set this accrual date at some time beyond the actual date of injury. The Court adopted such a rule for the first time in

*Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968), where it held that a medical malpractice cause of action accrues when "the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered, that he has sustained an injury as a result of the physician's negligent treatment." *Id.*, 243 A.2d at 751.[5] The Court later extended this principle to actions for property damage, so that the limitations period does not begin to run until "the evidence of injury to property, resulting from the negligent act upon which the action is based, is sufficiently significant to alert the injured party of the possibility of a defect." *Lee v. Morin*, 469 A.2d 358, 360 (R.I.1983) (latent construction defect in improvement to real property).

The discovery rule was given its most expansive application to date in *Anthony v. Abbott Laboratories*, 490 A.2d 43 (R.I.1985), where plaintiffs had suffered personal injuries as a result of exposure to the prescription drug diethylstilbestrol (DES). The Court noted that the nature of prescription drug product-related injuries distinguished those cases from the run-of-the-mill personal injury claim:

> In the case of a drug product, it cannot be thought that because a person experiences the adverse effect of a particular drug, she will or should assume that it was the result of wrongful conduct on the part of the manufacturer; the normal reaction would be otherwise....

> It is only later when a person learns that such effects are not an expected or predictable consequence of proper treatment that she can possibly be aware that she has an actionable claim against the manufacturer.

*Id.* at 47 (footnote omitted). For this reason, the Court concluded that for a drug product liability suit, the cause of action accrues not when the injury manifests itself, nor when

---

3. R.I.Gen.Laws § 9–1–13(b), which had provided a limitations period for product liability actions of ten years from the date of purchase, was declared unconstitutional by the Rhode Island Supreme Court in *Kennedy v. Cumberland Engineering Co.*, 471 A.2d 195, 198–201 (R.I.1984).

4. R.I.Gen.Laws § 9–1–14(b) provides: "Actions for injuries to the person shall be commenced

and sued within three (3) years next after the cause of action shall accrue, and not after."

5. The result in *Wilkinson* has since been codified at R.I.Gen.Laws § 9–1–14.1(b), which provides a specific statute of limitations for malpractice actions.

the plaintiff becomes aware of a causal connection between the drug product and the injury, but instead at the time the plaintiff discovers, or reasonably should discover, some wrongdoing or wrongful conduct on the part of the drug manufacturer.[6] *Id.* at 46–48.

■ Plaintiffs now ask this Court to extend the discovery rule of *Anthony* to cigarette product liability actions. In short, they argue that their cause of action did not accrue at the time the injury was discovered, nor at the time plaintiffs first had knowledge of the causal link between the injury and cigarettes. Instead, plaintiffs contend that the cause of action accrued—and the statute of limitations began to run—at the time they discovered, or should have discovered, the "wrongful conduct" of the cigarette companies.[7] However, for a number of reasons, the Court declines plaintiffs' invitation to extend *Anthony* to cigarette product liability actions.

■ As an initial matter, the Rhode Island Supreme Court has been unwilling to extend the *Anthony* rule beyond the drug product liability context. In his dissent in *Anthony,* now-Chief Justice Weisberger cautioned that any further extension of the discovery rule "would subvert the entire purpose of a statute of limitations." *Id.* at 49 (Weisberger, J., dissenting). Heeding that warning, the Court has been "mindful not to interpret *Anthony* to extend far beyond the facts on which it was based." *Benner v. J.H. Lynch & Sons, Inc.,* 641 A.2d 332, 337 (R.I.1994). In its most recent discussion of *Anthony,* the Court left no doubt that the rule announced therein applies solely to drug product liability cases, and not to product liability or personal injury cases generally:

> *Anthony* applied only to drug product-liability actions. Here, the complaint is

fashioned as a product-liability action with respect to a dangerous and defective container, not as a drug product-liability action.... [E]ven if the complaint had alleged that the acetic acid was defective in some manner, as far as we can determine acetic acid is not a drug, at least with respect to the manner in which plaintiff was exposed to its fumes. The reasonable-diligence standard and discovery rule enunciated in *Anthony,* therefore, have no application to the facts of the instant case.

*Renaud,* 662 A.2d at 716.

The same applies to the present action. Clearly, a cigarette is not a "drug product" as that term was used in *Anthony.* Unlike DES or other medications, cigarettes are not prescribed by physicians, nor are they used in the course of medical treatment for curative purposes. Therefore, in light of the severely limited scope of *Anthony,* the broad discovery rule of that case is of no relevance to the determination of when this cigarette product liability cause of action accrued.

Moreover, the justifications cited in *Anthony* for extending the discovery rule are absent in the cigarette product liability context. When a person suffers side effects of a prescription drug, the patient generally assumes that the injury is "either an unavoidable risk of treatment, considered acceptable by medical standards, or [ ] an unforeseeable consequence beyond anyone's control or responsibility." *Renaud,* 662 A.2d at 715 (explaining *Anthony* ). This assumption is a reasonable one, borne out of the reality of medical treatment—medications can have side effects, a patient is often willing to bear some side effects in order to realize the curative effects of the drug, and the patient relies on a physician to properly weigh the medical benefits and risks (both known and unknown) when prescribing the medication. Thus, mere knowledge of the causal link between

---

**6.** In the DES cases, the "wrongful conduct" cited by the plaintiffs was the drug manufacturers' inadequate testing and nondisclosure of information concerning the drug's side effects. *See id.* at 48.

**7.** In particular, plaintiffs maintain they discovered the following alleged misconduct within three years of filing this action: (1) that defendants had learned through internal research that nico-

tine was addictive, yet continued to deny this fact in public statements; (2) that additional information became known to defendants regarding the health risks of cigarette use that was not disclosed; (3) that cigarette companies had manipulated nicotine levels, especially through the use of chemical additives in cigarettes that enhanced the effect of nicotine and increased the addictiveness of cigarettes.

the drug and the injury is often insufficient to alert the patient that there may be a cause of action against the manufacturer—as far as the patient can tell, the drug worked as best as the patient and doctor could expect. Therefore, the Court in *Anthony* found it proper to toll the limitations period until the patient could discover that the underlying assumption was wrong, i.e., that the adverse side effects were not an expected or acceptable consequence of proper medical treatment. *Anthony,* 490 A.2d at 46–48; *see also Renaud,* 662 A.2d at 715–16.

However, in the cigarette product liability arena, there is no comparable assumption that could lead a smoker to believe that a smoking-related illness might be an "acceptable" by-product of cigarette use. Once a smoker learns of an injury and draws the causal connection between the injury and cigarette use, the smoker knows all he or she needs to know in order to commence an action: a manufacturer has placed a product on the market, and that product has caused an injury that was in no way intended or acceptable by any measure, medical or otherwise. In other words, unlike a patient's reasonable rationalization regarding a prescription drug's side effects, there is nothing to cloud a smoker's awareness that he or she somehow has been wronged by cigarette manufacturers. Thus, no further discovery of "wrongful conduct" is needed to alert the injured party to a potential cause of action.

■ In this Court's view, the accrual of a cigarette product liability action is more akin to that of a latent injury case such as *Wilkinson* or *Lee* than to that of a drug product liability action. In the cigarette liability situation, the so-called "time of injury" is the moment of exposure to cigarette smoke, a period which can extend over the course of decades for many smokers. However, while the exposure and injury is ongoing, the injuries do not become apparent until the symptoms (chronic cough, shortness of breath, etc.) begin to manifest themselves at some later date. Moreover, in some instances the smoker may not link an illness to cigarette use until an even later time, when a physician makes such a diagnosis. Therefore, a discovery rule similar to that in the *Wilkinson* case seems most appropriate in this kind of a case: a cigarette product liability cause of action does not accrue until the plaintiff has knowledge, or reasonably should have knowledge, of an injury and a possible causal connection between the injury and the plaintiff's use or exposure to cigarette smoke.[8] *See Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 170 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996) (adopting similar discovery rule under Texas law); *see also Kougasian v. Davol, Inc.,* 687 A.2d 459 (R.I.1997).[9]

■ Applying this rule to the present case, it is clear that the action is barred by the statute of limitations. Even viewing the facts in the light most favorable to plaintiffs, this cause of action accrued no later than 1988, seven years before this action was commenced. Arnold's deposition testimony establishes that on countless occasions prior to 1988, his physicians told him that his chronic cough and breathing problems were linked to his cigarette habit. On deposition Arnold also stated that at least 15 years before bringing this lawsuit, he believed that he had become addicted to cigarettes, and was

---

8. In the usual case, a smoker would be expected to draw the connection between such health problems and his or her cigarette use fairly quickly, as the dangers of cigarette smoking and the addictive nature of nicotine have become common knowledge in today's society. *See Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 172 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996) ("[T]he dangers of cigarette smoking have long been known to the community."); *Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 236 (6th Cir.1988) (similar).

9. *Kougasian,* the Rhode Island Supreme Court's most recent statute of limitations decision, pre-sented a fact-pattern that closely parallels that of the present case. In *Kougasian,* the plaintiff alleged that her lung cancer had been caused by ongoing exposure to a toxic gas emitted from defendant's manufacturing plant. In finding the action barred by the statute of limitations, the Court held that the cause of action accrued at the time plaintiff was diagnosed with lung cancer, since at that time she was aware of the emissions and knew that the particular gas could cause cancer. Thus, the logic of *Kougasian* is clearly reflected in the rule announced by this Court today.

aware that smoking would be a difficult practice to quit. Finally, it is undisputed that in April of 1988, Arnold's physician diagnosed his condition as COPD and informed him that the disease was caused by his cigarette smoking. These facts clearly demonstrate that by 1988, at the latest, Arnold became fully aware of all the facts necessary to assert this cause of action against the cigarette companies. Therefore, because he did not file this action until 1995, his action is barred under R.I.Gen.Laws § 9–1–14(b).[10]

■ Faced with this conclusion, plaintiffs suggest that R.I.Gen.Laws § 9–1–20,[11] which provides the limitations period for a concealed cause of action, tolls the statute of limitations in the present case. Plaintiffs contend that while the tobacco companies have continued to deny the addictive nature of nicotine and the health risks of smoking, defendants' own studies have for some time suggested otherwise. Further, plaintiffs allege that the cigarette companies have manipulated nicotine levels and added chemicals to cigarettes to enhance nicotine's effects, conduct that they failed to disclose to the public and continue to deny today. Maintaining that the practical effect of this conduct was to conceal a cause of action from plaintiffs and the general public, plaintiffs argue that § 9–1–20 tolls the running of the limitations period until plaintiffs could discover this wrongful conduct.

The flaw in plaintiffs' argument, however, is that the cause of action was not "concealed" from them as of April, 1988. Notwithstanding defendants' alleged attempts at deception, all the evidence before the Court suggests that plaintiffs were not in any way misled by this conduct. As noted above, by 1988 Arnold knew that he was addicted to cigarettes, and knew that his injuries were caused by his use of cigarettes. Even if this

Court were to apply § 9–1–20, which provides that a concealed cause of action accrues "at the time when the person entitled to sue thereon shall first discover its existence," this action had been discovered (and had thus accrued) by 1988.

Finally, while plaintiffs' contention concerning the manipulation of nicotine levels and chemical additives poses an interesting question, this does not change the outcome. As best as the Court can infer, plaintiffs' argument on this point is necessarily this: Arnold's injury is not just COPD, but the very *addiction* itself; COPD was no more than a consequence of his addiction to cigarettes and nicotine. Arnold maintains that his addiction was caused not merely by an exposure to nicotine, but by defendants' use of chemical additives to enhance the effect of nicotine, as well as any other manipulation of nicotine levels by the cigarette companies. Thus, Arnold maintains that the statute of limitations should not begin to run on his claim until he knew the true cause of his addiction—the defendants' misconduct—which he contends could not have been discovered until November 29, 1995, when a former tobacco research chief "let the cat out of the bag" when deposed in another tobacco liability case.[12]

An initial problem with this reasoning is that it does not square with what actually happened in this case, because this action was commenced approximately four months before the date of the deposition on which plaintiffs rely. Plaintiffs cannot logically maintain that they "discovered" wrongful conduct in November of 1995 which alerted them to this cause of action, when this action had already been filed prior to the alleged discovery.

---

**10.** In addition, because his wife's loss of consortium claim is derivative in nature and dependent upon the injured spouse's underlying tort allegations, her claim fails as well. *See Jameson v. Hawthorne*, 635 A.2d 1167, 1172–73 (R.I.1994).

**11. 9–1–20. Time of accrual of concealed cause of action.—**

If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him the existence of the cause of

such action, said cause of action shall be deemed to accrue against the person so liable thereof at the time when the person entitled to sue thereon shall first discover its existence.

**12.** Plaintiffs point to the deposition testimony of Jeffrey Wigand, a former tobacco industry research chief, who has testified in connection with the State of Mississippi's lawsuit against the tobacco companies.

■ Nevertheless, even under this revised theory of the case, the discovery of wrongful conduct would not be necessary for a cause of action to accrue. In general, once a plaintiff is aware that he or she has been injured by a product, that plaintiff has enough information to commence a products liability action based on that injury. For the action to accrue, a plaintiff does not need to be aware of all the facts supporting the claim, such as whether a particular component was defective or whether and how the design was flawed—such factual investigation is the subject of the discovery process. Plaintiffs' view, which is essentially that a cause of action does not accrue until the investigation is complete, "would render the statute of limitations meaningless and ineffective." *See Benner,* 641 A.2d at 336. As the Court has noted in a related context:

> [T]he traumatic event is immediately apparent to the participants or their legal representatives. It does not mean that the entire theory of the case immediately becomes apparent to the potential plaintiff. Without question, he or she must carry out both factual and legal investigations of varying durations.... This does not mean that the statute of limitations will be tolled until the investigation is complete....
>
> ....
>
> .... The plaintiff's certitude of negligence by [defendant] cannot be the deciding factor to determine when the statute of limitations begins to run. This would completely destroy the effectiveness of a limitations period.

*Id.* at 336–38 (wrongful death action based on negligence).

This reasoning applies with equal force to this cigarette liability action. All the evidence shows that by 1988 Arnold knew that he had had become addicted to, and had been injured by, cigarettes. At that point, Arnold may not have known whether cigarettes were defectively designed, or whether a particular ingredient or component of the product had caused his injuries; however, he would not need to know these particulars in order to commence an action based on his smoking-related injuries. Indeed, it may have been impossible for Arnold to have such knowledge at the time he discovered his injury—but that is the very reason why plaintiffs are afforded the investigatory tools of the discovery process. Because Arnold's claim accrued at the time he became aware of the facts necessary to commence this action, and not at the time his entire theory of the case came together, this action is time-barred.

## IV. Conclusion

The United States Supreme Court has noted that "statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose." *United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 361, 62 L.Ed.2d 259 (1979). In the present case, Arnold's addiction and injuries are tragic, and the alleged deceptive conduct of the cigarette companies, if true, is certainly deplorable. Nevertheless, no matter how compelling the case, this Court is constrained by the state legislature's reasonable determination of when the value of repose outweighs a plaintiff's right to seek enforcement of a potentially valid legal claim. *See Renaud,* 662 A.2d at 717. Because the Rhode Island legislature has struck this balance at three years in personal injury cases, this action is barred by the statute of limitations.

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk shall enter judgment for defendants forthwith.

It is so ordered.