**Joseph P. NAPLES and Janice C. Naples, Plaintiffs,**

**v.**

**ACER AMERICA CORPORATION, Altos Computer Systems, Inc., now known as Acer America Corporation, and Altos Computer Systems, Unisys Corporation, International Business Machines Corporation, and Tandy Corporation, Defendants.**

**Civil Action No. 95–592L.**

United States District Court, D. Rhode Island.

July 10, 1997.

Robert C. Corrente, Jeffrey S. Brenner, Corrente, Brill & Kusinitz, Providence, RI, Steven J. Philips, Levy, Phillips & Konigsberg, New York City, for Joseph P. Naples, Janice C. Naples.

Benjamin V. White, III, Kimberly A. Simpson, Vetter & White, Providence, RI, Robert J. Kashtan, Baker & McKenzie, New York City, Bruce H. Jackson, Valerie H. Diamond, Baker & McKenzie, San Francisco, CA, for Acer America, Altos Computer Systems.

Mark O. Denehy, Adler, Pollock & Sheehan, Providence, RI, Jeffrey L. Chase, Herzfeld & Rubin, P.C., New York City, Garineh S. Dovletian, Pozio, Bromberg & Newman, Morristown, NJ, for Unisys Corp.

Matthew F. Medeiros, Robert Karmen, Fausto C. Anguilla, Medeiros, Karmen & Sanford Inc., Providence, RI, Joseph A. D'Avanzo, Cerussi & Spring, White Plains, NY, for Intern. Business Machines.

Mark P. Dolan, Rice, Dolan & Kershaw, Providence, RI, Mark A. Fay, Providence,

RI, Robert E. Quirk, Quirk & Bakalor, New York City, for Tandy Corp.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

In this product liability action, plaintiffs Joseph Naples and Janice Naples seek to recover for injuries sustained from Mr. Naples' long-term use of allegedly defective computer keyboards manufactured by defendants Acer America Corporation ("Acer"), Altos Computer Systems ("Altos"), Unisys Corporation ("Unisys") International Business Machines Corporation ("IBM"), and Tandy Corporation ("Tandy") The matter is presently before the Court on the motion of each defendant for summary judgment on statute of limitations grounds. For the reasons that follow, each defendant's motion is granted.

## I. Background

For the purposes of these motions, the parties have stipulated to the following facts. Prom 1980 to 1991, in the course of his employment as a controller for various Massachusetts and Rhode Island corporations, Joseph Naples worked on computer keyboard equipment manufactured by defendants. Specifically: (1) from 1980 to 1984, Naples used a Tandy keyboard while at National Hydro Corporation in Boston, Massachusetts; (2) from 1984 to 1986, he used an IBM keyboard while employed at Clean Industry, Inc. in East Boston, Massachusetts; (3) from 1986 to 1990, he used a Unisys keyboard while employed at MacDonald & Watson Waste Oil Co., Inc. in Johnston, Rhode Island; and (4) from 1990 to 1991, he used an Acer and/or Altos keyboard while employed at Dennison Oil, Inc. in Hanson, Massachusetts.

Naples began experiencing numbness, tingling, pain, and/or sensory motor impairments of the upper extremities, neck, and torso in or about June 1990. In November 1990, he was diagnosed as suffering from bilateral carpal tunnel syndrome, bilateral nerve entrapment, and ulnar nerve transfer of the upper left extremity. Naples had surgery for right and left carpal tunnel syndromes in November 1992 and January 1993, respectively.

On or about April 19, 1994, plaintiffs filed this four-count Complaint in the Eastern District of New York, one of over six hundred similar cases filed in that district seeking to recover from various manufacturers for repetitive stress injuries ("RSI") such as those suffered by Naples, allegedly traceable to the use of computer keyboards, stenographic machines, typewriters, and the like. Joseph Naples premises his claim on theories of negligence and strict products liability, alleging that the keyboards were defective in design and that defendants failed to adequately warn users of the dangers inherent in the repeated use of their products. In addition, Janice Naples asserts a claim for loss of consortium, and the couple seeks punitive damages against the manufacturers of the challenged keyboard equipment.

On October 23, 1995, for the convenience of the parties and witnesses and in the interests of justice, the action was transferred to this Court pursuant to 28 U.S.C. § 1404(a). *In re Eastern Dist. Repetitive Stress Injury Litig.*, (E.D.N.Y. October 23, 1995) (Memorandum addressing motions to transfer).[1] Soon thereafter, each defendant filed a motion for summary judgment, contending that plaintiffs' action is barred under both the New York and Rhode Island statutes of limitations, which provide three-year limitations periods for personal injury claims. *See* N.Y. C.P.L.R. § 214(5) (McKinney 1990); R.I. Gen. Laws § 9–1–14(b) (1985 Reenactment). Plaintiffs reply that a "discovery rule" tolls the statute of limitations in this case under both New York and Rhode Island law, so that this cause of action did not accrue until May 1.993, when an attorney advised plaintiffs that they might be able to assert a products liability claim against the various manufacturers of the equipment Naples had used. After hearing the arguments of coun-

---

1. Judge Hurley premised his decision to transfer the action to this Court on the fact that plaintiffs are residents of Rhode Island, and on the fact that the alleged cause of action arose in this state. *See Naples v. Acer Am. Corp.*, No. 94–CV–1823 (DRH) (E.D.N.Y. Oct. 23, 1995) (Order transferring case).

sel, the Court took the matter under advisement. It is now in order for decision.

## II. Standard for Decision

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996).

## III. Discussion

 choice of law in a diversity case is governed by the conflict of laws provisions of the forum state, *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Spurlin v. Merchants Ins. Co.*, 57 F.3d 9, 10 (1st Cir.1995). However, when a district court grants a venue change pursuant to 28 U.S.C. § 1404(a), the receiving court must apply the conflicts rule of the state in which the transferror court sits, in other words, "the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964). This rule applies regardless of whether the plaintiff or the defendant initiated the change in venue. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523, 110 S.Ct. 1274, 1279–80, 108 L.Ed.2d 443 (1990). Therefore, to resolve the present dispute, the Court must first determine which statute of limitations the district court would have applied had the action remained in the Eastern District of New York.

 It is well settled that New York limitations law governs diversity actions filed in the federal courts in New York state. *See, e.g., Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981); *Smith v. International Bus. Machs. Corp.*, 898 F.Supp. 140, 143–44 (E.D.N.Y.1995). For injuries occurring outside the state, courts must refer to New York's "borrowing statute" to determine the applicable limitations rule:

### § 202 —Cause of action accruing without the state

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202 (McKinney 1990). The parties agree that this cause of action accrued in Rhode Island; plaintiffs were Rhode Island residents during the entire period in question, and Joseph Naples was working in Rhode Island both when he first experienced symptoms and when his injuries were Later diagnosed by a doctor. *See Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97, 100–01 (1978) (discussing place where cause of action accrues for purposes of borrowing statute).[2] Therefore, to survive these motions for summary judgment, this action must be timely under both New York and Rhode Island limitations law.

## A. New York's Statute of Limitations

 Under New York law, actions to recover damages for personal injuries, including product liability: actions, must be commenced within three years from the date the cause of action accrues. N.Y. C.P.L.R. § 214(5) (McKinney 1990). Generally, a cause

**2.** While the parties offer different methods for determining where a cause of action accrues for purposes of the borrowing statute, the Court need not resolve this issue here, since the Court would conclude that the cause of action accrued in Rhode Island under either the "place of injury" or "grouping of contacts" approaches advanced by the parties.

of action accrues, and the limitations period commences, on the date of injury. *See Snyder v. Town Insulation, Inc.,* 81 N.Y.2d 429, 599 N.Y.S.2d 515, 516, 615 N.E.2d 999, 1000 (1993). Therefore, it is the injury itself, and not the negligent act of the defendant or the discovery of the wrong by the plaintiff, that triggers the running of the statute of limitations. *See Kronos, Inc. v. AVX,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993). "Stated another way, accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *Id.; see also Dorsey v. Apple Computers, Inc.,* 936 F.Supp. 89, 91–92 (E.D.N.Y.1996).

■ The New York Court of Appeals has not yet ruled on when the statute of limitations begins to run in RSI cases. *See Dorsey,* 936 F.Supp. at 90. However, New York's intermediate courts of appeals have recently held that the general rule applies to RSI actions—the limitations period begins to run on the date of injury. *See id.* at 90–92 (reviewing state decisions); *Coughlin v. International Bus. Machs. Corp.,* 225 A.D.2d 256, 650 N.Y.S.2d 477, 479 (3d Dep't 1996); *Piper v. International Bus. Machs. Corp.,* 219 A.D.2d 56, 639 N.Y.S.2d 623, 624–25 (4th Dep't 1996). Further, those courts have fixed the "date of injury" for RSI cases at the first onset of symptoms. *See Coughlin,* 650 N.Y.S.2d at 479; *Piper,* 639 N.Y.S.2d at 626–27.[3] Thus, under governing New York law, the limitations period commences on the date when the plaintiff first experiences symptoms of RSI, and not when these symptoms later developed into a diagnosable condition. *See Benne v. International Bus. Machs.* 87 F.3d 419, 427–28 (10th Cir.1996) (adopting "first onset of symptoms" accrual rule in RSI case transferred from New York); *Thorn v. International Bus. Machs., Inc.,* 101 F.3d 70, 74 (8th Cir.1996) (same).

■ Under this rule, it is clear that this action is barred by the statute of limitations. As the parties have stipulated, Joseph Naples first experienced symptoms in June 1990, when he noted numbness, tingling, pain, and sensory motor impairment of the upper extremities, neck, and torso. Thus, his cause of action accrued—and the statute of limitations began to run—in June of 1990. Because this action was not filed until April 1994, well outside the three-year period allowed by N.Y. C.P.L.R. § 214(5), his claim is barred by the statute of limitations. It follows that his wife's derivative claim for loss of consortium must fail as well. *See Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 748–49, 404 N.E.2d 1288, 1291 (1980).

Faced with this conclusion, plaintiffs maintain that New York's "discovery rule" tolls the running of the limitations period in this case. To support their contention, plaintiffs cite N.Y. C.P.L.R. § 214–c, which provides a special accrual rule for injuries caused by "latent effects of exposure to any substance or combination of substances, in any form, upon or within the body." *See* N.Y. C.P.L.R. § 214–c (McKinney 1990). Generally, for injuries covered by this section, the three-year limitations period does not begin to run until the injury is discovered. *See* § 214–c(2).[4] This section also makes special provision for cases where, due to the insufficiency of current technical, scientific, or medical knowledge, the cause of the injury cannot be determined at the time the injury itself is discovered, allowing an action to be

---

3. It is to be noted that one intermediate court of appeals in New York has fixed the accrual date at an even earlier point—at the plaintiff's first use of a keyboard. *See Blanco v. American Tel. & Tel. Co.,* 223 A.D.2d 156, 646 N.Y.S.2d 99, 104, *leave to file appeal granted,* 234 A.D.2d 239, 652 N.Y.S.2d 503 (1st Dep't 1996). Rather than address the conflict here, the Court will simply adopt the majority view, which is the view most favorable to plaintiffs. In light of this Court's ultimate conclusion that the action is untimely under the "first onset of symptoms" rule, the same would obviously follow if an earlier accrual date were used per *Blanco.*

4. Section 214–c(2) provides, in relevant part:

 [T]he three year period within which an action to recover damages for personal injury ... caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body ... must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

filed within one year of the eventual discovery of the cause. *See* § 214–c(4).[5]

■ However, this discovery rule is of no help to plaintiffs here. First, and most importantly, New York's state courts have squarely held that § 214–c does not apply to RSI cases, because a keyboard is not a "substance" within the meaning of the section. *See Parajecki v. International Bus. Machs. Corp.*, 899 F.Supp. 1050, 1053–54 (E.D.N.Y. 1995) (reviewing state decisions limiting § 214–c to "toxic tort" cases) *vacated in part*, 165 F.R.D. 20, 22 (E.D.N.Y.1996) (dismissing claims, that remained viable after original decision); *Coughlin*, 650 N.Y.S.2d at 479.[6] This holding has been followed universally by federal courts applying New York law in RSI cases. *See, e.g., Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1225 (10th Cir.1997), *petition for cert. filed*, 65 U.S.L.W. 3799 (U.S. May 20, 1997) (NO, 96–1848); *Thorn*, 101 F.3d at 73–74; *Harrison v. Olivetti Office USA. Inc.*, 939 F.Supp. 5, 6 (D.D.C.1996). The Court concludes that these decisions are persuasive, and agrees that § 214–c is inapplicable to RSI actions.

■ Moreover, even if § 214–c was deemed applicable to RSI cases, this action would be time-barred nonetheless, since the injuries were certainly "discovered" by November 1990, at the very latest, when a doctor diagnosed Joseph Naples as suffering from carpal tunnel syndrome and related ailments. *See In re New York County DES Litig.*, 89 N.Y.2d 506, 655 N.Y.S.2d 862, 866, 678 N.E.2d 474, 478 (1997) (addressing when discovery occurs for purposes of § 214–c). Since plaintiffs have not made any showing that medical knowledge was insufficient at that time to link such injuries to keyboard use—the showing needed to trigger the "latent cause" tolling provision of § 214–c(4)[7]—this diagnosis commenced the running of the limitations period. Therefore, because this action was filed more than three years after Naples' injuries were diagnosed, it would be untimely even if plaintiffs were given the benefit of the discovery rule.

■ Plaintiffs' remaining contentions can be resolved in short order. First, Naples claims that he sustained new injuries and aggravated existing injuries within the limitations period. Under New York law, when a plaintiff is first injured outside the limitations period but alleges qualitatively different injuries occurring within the statutory period, a claim may be maintained based on the later harm. *See, e.g., Piper*, 639 N.Y.S.2d at 627. However, aside from his attorney's conclusory allegations, Naples has provided no evidence of any such new or aggravated injuries, nor evidence that any such injuries were "separate and distinct" from the injuries diagnosed in 1990.[8] *See*

---

5. Section 214–c(4) provides, in relevant part:

 [W]here the discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury . . ., an action may be commenced or a claim filed within one year of such discovery of the cause of the injury; provided, however, if any such action is commenced or claim filed after the period in which it would otherwise have been authorized pursuant to subdivision two or three of this section the plaintiff or claimant shall be required to allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized.

6. Further, since oral arguments in this case, the New York Court of Appeals has issued a statute of Limitations opinion that centers on this discovery rule, throughout which the Court refers to § 214–c as the toxic tort discovery rule. *See In*

*re New York County DES Litig.*, 89 N.Y.2d 506, 655 N.Y.S.2d 862, 864–66, 678 N.E.2d 474, 476–78 (1997) (discussing legislative history and purposes of statute).

7. Naples does not claim that his doctor failed to tell him that RSI could be related to repeated keyboard use. Instead, the May 1993 "discovery" cited in his affidavit is his discovery of the possibility of filing a legal claim. However, what his doctor or lawyer told him is plainly irrelevant to the analysis under § 214–c(4). By its express language, § 214–c(4) applies only to those cases where medical or scientific knowledge is such that the cause of a given injury cannot be determined within the limitations period. *See supra* note 5. As such, plaintiffs' reliance on § 214–c(4) misses the mark completely.

8. For example, carpal tunnel syndrome of the right hand is a separate and distinct harm from carpal tunnel syndrome of the left hand, so that each injury could accrue on a different date. *See Piper*, 639 N.Y.S.2d at 627.

*Parajecki*, 899 F.Supp. at 1056–57 (rejecting claims for new injuries on same ground); *Coughlin*, 650 N.Y.S.2d at 480 (same) There is also no merit to the contention that a continuing duty to warn extends the limitations period so as to render this action timely. As with any other personal injury claim under New York law, a claim premised on a duty to warn accrues at the time of injury, *see Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824 828–29 (1936), and "the mere continuation of that duty into the limitations period is not enough to resurrect a cause of action premised upon an injury occurring earlier … attributable to defendant's failure to warn." *Coughlin*, 650 N.Y.S.2d at 480; *see also Parajecki*, 899 F.Supp. at 1057 n. 10.[9]

Accordingly, applying New York law, this Court must conclude that plaintiffs' cause of action accrued in June 1990, at the first onset of symptoms, or at the very latest by November 1990, when Naples' injuries were diagnosed by a physician. Because this action was not filed until April 1994, it is barred by New York's three-year statute of limitations for personal injury claims.

**B. Rhode Island's Statute of Limitations**

██ R.I. Gen. Laws § 9–1–14(b) (1985 Reenactment) governs all suits to recover damages for personal injuries, whether the action sounds in negligence, strict products liability, failure to warn, or any other theory of liability. *See Pirri v. Toledo Scale Corp.*, 619 A.2d 429, 431 (R.I.1993) Under that section, all claims for personal injuries must be filed within three years of the accrual of the cause of action.[10] As a general rule, a cause of action for personal injury accrues at the time of injury. *See Renaud v. Sigma–Aldrich Corp.*, 662 A.2d 711, 714 (R.I.1995).

However, the Rhode Island Supreme Court has recognized that for some factual settings, the operation of a "discovery rule" serves to set accrual at some time beyond the actual date of injury. The Court first recognized a discovery rule exception to the statute of limitations in *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968), where it held that a cause of action for medical malpractice accrues at the time a plaintiff discovers, or through the exercise of reasonable diligence should discover, that he or she has sustained an injury. *Id.*, 243 A.2d at 751. The Court has since extended this principle to actions for property damage, *see Lee v. Morin*, 469 A.2d 358, 360 (R.I.1983), and to actions against drug manufacturers under strict products liability, *see Anthony v. Abbott Laboratories*, 490 A.2d 43, 46 (R.I.1985).

While the Rhode Island Supreme Court has not yet considered an RSI case, it is this Court's view that some form of discovery rule would be adopted in this context. Unlike the paradigm personal injury case, such as a slip and fall or an automobile accident, it is not possible to pinpoint a precise "time of injury" for RSI claims. The very nature of the injury is such that it occurs as a result of a prolonged and cumulative process—in essence, a keyboard user is allegedly "injured" each time he or she strikes the keypad. However, while the injury is ongoing, the user will not realize that anything is wrong until the symptoms of RSI begin to manifest themselves at some later date. Thus, even if the date of accrual was set at the latest possible "time of injury"—the last use of a keyboard[11]—in some instances the three-year limitations period could expire before the plaintiff experiences any symptoms at all, i.e., before the plaintiff knows that he or she has been injured. As the Court recognized in *Wilkinson*:

> To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was

9. There is also no basis on which the Court could hold defendants equitably estopped from asserting a statute of limitations defense, as there is no indication that "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 262, 377 N.E.2d 713, 716 (1978).

10. R.I. Gen. Laws § 9–1–14(b) provides: "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."

11. In other words, this would be the last time the plaintiff struck a keypad, and thus the last time he or she was injured.

the victim did not manifest: itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust.

*Wilkinson,* 243 A.2d at 753.

■ In adopting a discovery rule for RSI cases, the Rhode Island Supreme Court could reasonably find that the cause of action accrues, and that the statute of limitations begins to run, on either of three dates: (1) the date of the first onset of RSI symptoms; (2) the date a physician diagnoses the symptoms as a repetitive stress injury; or (3) the date a plaintiff has knowledge, or reasonably should know, of the possible causal connection between RSI and long-term keyboard use.[12] The third option would yield the latest possible accrual date, since at that time a plaintiff clearly would be aware of all of the facts necessary to assert an RSI cause of action *Compare Kougasian v. Davol, Inc.,* 687 A.2d 459, 460–61 (R.I.1997) (similar discovery rule applied in toxic gas exposure case). However, the Rhode Island Court might instead adopt the New York position and find that the first onset of symptoms is significant enough to alert a reasonable person to the possibility of an injury, at which point he or she would be expected to further investigate the nature, scope, and source of the injury within the limitations period. *Compare Benner v. J.H. Lynch & Sons, Inc.,* 641 A.2d 332, 338 (R.I.1994) ("A potential plaintiff Js under an affirmative duty to investigate diligently a claim and is not allowed to use the discovery rule to postpone indefinitely the running of the statute of limitations."). Therefore, well-reasoned legal and policy arguments could be made in favor of fixing accrual at either of the dates suggested herein.

■ However, at this time it is not necessary to determine which of these accrual rules the Rhode Island Supreme Court would adopt, because the instant action would be time-barred under either rule. Even when viewed in the light most favorable to plaintiffs, it is clear that this cause of action, accrued, at the very latest, in November 1990, when Joseph Naples was diagnosed as suffering from carpal tunnel syndrome and related injuries. it is certainly reasonable to infer that, at the time of diagnosis, the doctor explained that RSI can be caused by a repetitive motion such as typing on a keyboard; the fact that Naples stopped using computer keyboards soon after the diagnosis supports the inference that he was aware of the link between RSI and typing.[13] Therefore, as of November 1990, Naples knew (or should have known) everything he needed to know in order to commence this action—he knew he was injured, he knew the nature of his injuries, and he knew the possible cause of his injuries. Because this action was not filed until April 1994, more than three years later, his claim is barred by the Rhode Island statute of limitations. In addition, since his wife's loss of consortium claim is derivative in nature and dependent upon the injured spouse's underlying tort claim, her claim fails as well. *See Jameson v. Hawthorne,* 635 A.2d 1167, 1172–73 (R.I.1994).

Faced with this result, plaintiffs suggest that the accrual date in RSI cases should be set at an even later date. Relying on *Anthony v. Abbott Laboratories,* 490 A.2d 43 (R.I. 1985), they argue that the limitations period in an RSI case should be tolled until a plaintiff discovers not only the injury and its cause, but also some wrongful conduct on the part of the keyboard manufacturers.[14] How-

---

12. Of course, in practically all cases the second and third dates would be the same, since it is reasonable to assume that a doctor, upon making the diagnosis, would then explain the possible causes of RSI to the patient.

13. In his affidavit, Naples does not address whether he received such an explanation from his doctor, nor does he claim that he first became aware of the link between RSI and keyboard use at a later date. Instead, Naples states that May 1993 was the first time he became

aware that he could assert a legal claim against defendants. However, the only "discovery" relevant here is the discovery of an injury and its cause, not the discovery of a legal theory on which plaintiffs might be able to recover.

14. In *Anthony,* the Court held that a drug product liability cause of action does not accrue until a plaintiff discovers an injury, a causal connection between the drug product and the *See Anthony,* 490 A.2d at 46.

ever, as this Court noted in *Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110, 114 (D.R.I.1997), the Rhode Island Supreme Court has severely limited the reach of *Anthony*, so that it is now clear that *Anthony* applies solely to drug product liability actions, and not to products liability or personal injury cases generally.[15] *See Renaud,* 662 A.2d at 716; *Benner,* 641 A.2d at 337. Because a keyboard is not a drug product, *Anthony* is inapplicable to RSI cases.

## IV. Conclusion

For all of these reasons, the Court concludes that this action is time-barred under both the New York and Rhode Island statutes of limitations. Accordingly, defendants' motions for summary judgment are granted. The Clerk shall enter judgment for defendants forthwith.

It is so ordered.

---

**15.** The Court also notes that, as in the cigarette product liability context, the policy justifications underlying the *Anthony* rule are not evident in RSI cases. *See Arnold,* 956 F.Supp. at 114–15 (articulating policy grounds for *Anthony* ).