USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1497

 BARBARA F. NICOLO,

 Plaintiff, Appellant,

 v.

 PHILLIP MORRIS, INC., 
 LIGGETT GROUP, INC., AND LIGGETT & MYERS, INC.,
 
 Defendants, Appellees.
 
 
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF RHODE ISLAND
 
 [Hon. Ernest C. Torres, U.S. District Judge]
 
 
 
 Before
 
 Boudin, Circuit Judge,
 Coffin, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 
 
 
 Michael T. Eskey with whom Lauren E. Jones was on brief for
appellant.
 Paul E. Nemser with whom Thomas J. Griffin, Jr., John B.
Daukas, and David A. Wollin, were on brief for Phillip Morris, Inc.
 Douglas J. Emanuel for Liggett Group, Inc. and Liggett &
Myers, Inc.

January 6, 2000

 
 

 COFFIN, Senior Circuit Judge. Plaintiff, an addicted
cigarette smoker for most of her adult life, had contracted, by
1988, a series of smoking-related illnesses, including asthma,
emphysema, and chronic obstructive pulmonary disease (COPD). Five
years later, she was diagnosed as having lung cancer. She brought
suit against the Chesterfield and Marlboro cigarette companies,
Liggett Group, Inc., Liggett & Myers, Inc., and Philip Morris,
Inc., within the statutory limitations period of three years from
the diagnosis of cancer but not within three years of the onset of
the earlier respiratory illnesses.
 The district court for the District of Rhode Island
granted summary judgment for defendants, holding that all claims
were barred by the running of the statutory limitations period. 
The major issue on appeal concerns the time of accrual of
plaintiff's cause of action based on her lung cancer, specifically,
whether the record justifies judgment as a matter of law that the
cancer ultimately diagnosed must be considered as embraced within
and reasonably foreseeable from the earlier symptoms.
 This is a case based on diversity jurisdiction. Our
review of Rhode Island law and the medical record in this case
persuades us that a genuine question of material fact exists, which
precludes summary judgment, namely whether cancer was so clearly
foreseeable by a person exercising reasonable diligence that she
should have filed her complaint within three years of the time when
she was diagnosed as suffering a series of significant respiratory
diseases. We have not found merit in plaintiff's other arguments.
 I. Factual Background
 The facts present an all too familiar, poignant
history. Plaintiff, sixty-two years old when she filed suit in
1996, had begun smoking at age fifteen. By the 1960s her husband
and her doctors asked her to quit. She tried unsuccessfully. In
the 1970s she resorted to hypnosis and acupuncture. Late in the
decade she was experiencing difficulty in breathing and circulatory
problems with her feet. In the early 1980s, she tried nicotine gum
and began taking medication. She then knew she was "hooked" on
cigarettes. Between 1980 and 1985 she had two operations to remove
benign polyps from her vocal cords. By May 1988, she had been
diagnosed with and was being treated for asthma, emphysema, and
COPD. She also suffered an apparent heart attack in 1988. In 1988
and 1989, she underwent two back surgeries. In 1991 or 1992 she
tried a nicotine transdermal patch to help her quit; this failing,
she attempted to join a counseling program but was not accepted. 
In November 1993, she was scheduled for a third back surgery. A
preoperative chest x-ray revealed lung cancer. Immediately after
the operation, she succeeded in permanently quitting smoking.
 II. Procedural History
 On September 16, 1996, plaintiff brought suit. Her
amended complaint set forth four grounds for recovery: (1)
manufacturing and selling known dangerously defective products
containing addictive and carcinogenic substances (strict
liability); (2) negligently making and selling cigarettes posing a
health threat; (3) breaching an implied warranty that the purchased
cigarettes were fit for human consumption; and (4) under the rubric
of "fraudulent misrepresentations," knowing that nicotine is
addictive and purposefully increasing the level of nicotine to
increase its addictive effect, while denying such effect, 
concealing pertinent research, and disseminating favorable
advertising. She sought both compensatory and punitive damages.
 Defendants moved for summary judgment, primarily
asserting the bar of the statute of limitations. Responsive
exchanges from the parties followed. Under R.I. Gen. Laws 9-1-
14(b), an action for personal injuries "shall be commenced and sued
within three (3) years next after the cause of action shall accrue,
and not after." Plaintiff, who does not seek damages for her
earlier illnesses, contends that her cause of action for cancer did
not accrue until she was diagnosed with that disease in November
1993. Within three years of this date, in September 1996, she
filed her complaint. Defendants assert that by 1989, being
afflicted with asthma, emphysema, and COPD, suffering from "totally
disabling respiratory illness, [plaintiff] knew all she needed to
know and should have brought suit." Not having done so, argue
defendants, plaintiff is barred by the running of the statutory
period.

 III. The District Court Decision
 The district court began its analysis by reciting the
generally applicable Rhode Island law governing the time of accrual
of a cause of action, namely, "'the time of injury,'" citing Renaud
v. Sigma-Aldrich Corp., 662 A.2d 711, 714 (R.I. 1995) (quoting
Plouffe v. Goodyear Tire & Rubber Co., 373 A.2d 492, 495 (R.I.
1977)). It then acknowledged the supplementation of this rule with
a "discovery rule" defining the accrual of certain causes of action
as a time when a plaintiff could have discovered in the exercise of
reasonable diligence that he or she was injured as a result of
defendant's conduct. 
 The court invoked the primary line of Rhode Island
cases in this regard, which began with Wilkinson v. Harrington, 243
A.2d 745 (R.I. 1968). In that case, the Supreme Court of Rhode
Island adopted a discovery rule for medical malpractice claims. 
See id. at 753. Under such a rule, "the statute of limitations
does not commence until the plaintiff discovers, or in the exercise
of reasonable diligence, should have discovered, that he has
sustained an injury as a result of the physician's negligent
treatment." Id. at 751. In Lee v. Morin, 469 A.2d 358 (R.I.
1983), the court extended the reach of the rule, applying it to
actions for injuries to real property, holding that a claim for
faulty construction was timely filed because the limitations period
commenced at the time when the problem was discovered rather than
when the construction occurred. See id. at 360-61 ("The rationale
for this [rule] is that a person have a reasonable opportunity to
become cognizant of an injury."). The court again addressed the
discovery rule's scope in Anthony v. Abbott Laboratories, 490 A.2d
43 (R.I. 1985), and decided to apply a discovery rule to actions
for drug product liability. See id. at 46 ("[I]n a drug product-
liability action where the manifestation of an injury, the cause of
that injury, and the person's knowledge of the wrongdoing by the
manufacturer occur at different points in time, the running of the
statute of limitations would begin when the person discovers, or
with reasonable diligence should have discovered, the wrongful
conduct of the manufacturer.").
 The district court then cited another cigarette product
liability case decided by a judge within the same district, Arnold
v. R.J. Reynolds Tobacco Co., 956 F. Supp. 110 (D.R.I. 1997). This
was a case in which a plaintiff was diagnosed with COPD in 1988 but
did not bring suit for this condition until 1995. The court,
applying the latent injury discovery rule enunciated in Wilkinson,
held that "a cigarette product liability cause of action does not
accrue until the plaintiff has knowledge, or reasonably should have
knowledge, of an injury and a possible causal connection between
the injury and the plaintiff's use or exposure to cigarette smoke." 
Id. at 115. For seven years, plaintiff had knowingly suffered from
COPD. See id. at 112. In that case, however, COPD had not been
followed by cancer.
 Next, the district court characterized plaintiff's
argument as claiming that each different manifestation of an ill
effect from smoking constituted a separate and discrete injury. It
observed that courts generally have held that the statutory period
begins to run "at the time of the initial injury even though the
full magnitude of the harm [does] not become apparent until later." 
In support of this proposition, the court cited three cases. The
first was a case involving the evolution of HIV to AIDS, Nelson v.
American National Red Cross, 26 F.3d 193 (D.C. Cir. 1994), in which
the court held that the discovery of HIV infection in the
plaintiff's blood signaled the start of the limitations period for
an AIDS claim against a hospital and blood supplier. See id. at
198. The second involved damages resulting from a specific device,
Gagnon v. G.D. Searle & Co., 889 F.2d 340 (lst Cir. 1989), in which
this court held that the plaintiff's physical symptoms upon the
removal of an intrauterine contraception device should have alerted
her to her injury and thus triggered the accrual of her tort claims
against the manufacturer. See id. at 343. In the third case,
Joyce v. A.C. and S., Inc., 785 F.2d 1200 (4th Cir. 1986), a
federal court reluctantly applied the severe Virginia rule that
accrual of a claim occurs at the time of an injury, "however
slight," and held that a claim of asbestosis accrued when pleural
thickening in the lungs was discovered, even though such pleural
thickening remained asymptomatic for as long as eleven years. See
id. at 1205.
 The district court, without adopting such a rule,
concluded with its holding and rationale in the following language:
 There may be a basis for arguing that
 a new cause of action accrues upon
 manifestation of a separate and distinct
 injury that is unrelated to the initial
 injury and could not have been anticipated
 as a consequence of that injury. However,
 even if that argument has merit, it does
 not assist the plaintiff in this case. 
 Nicolo's initial injury and all of its
 sequelae consist of impairments to and
 diseases of her respiratory system. . . .
 By 1989, she had become totally disabled
 by asthma, emphysema and COPD, all of
 which doctors told her were attributable
 to smoking. In light of those facts, the
 development of lung cancer was a readily
 foreseeable, if not inevitable,
 consequence of her initial injury and
 continued smoking. Therefore, her cause
 of action clearly had accrued at that
 time.

 IV. Analysis
 
 A. Preliminary Issues
 We preface our substantive analysis with consideration
of three framework issues: our standard of review, choice of law,
and the possible forfeiture, or procedural default, by plaintiff of
the major issue concerning the accrual of a cause of action based
on cancer. 
 The decision being appealed is a grant of summary
judgment to defendants. We review the district court's decision de
novo. See Preferred Mut. Ins. Co. v. Travelers Cos., 127 F.3d 136,
137 (lst Cir. 1997). This means that we take all facts and
reasonable inferences therefrom favorably to plaintiff, see
Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1171 (lst Cir.
1988); that we overlook conjectural allegations, conclusory
assertions, and even inconsequential evidence, see Griggs-Ryan v.
Smith, 904 F.2d 112, 115 (lst Cir. 1990); but that if we find that
the state of evidence reveals a genuine issue of material fact as
to the existence of an element necessary for the issuance of
judgment to the movant, the matter must be submitted to a trier of
fact, see Greenburg v. Puerto Rico Maritime Shipping Auth., 835
F.2d 932, 934 (lst Cir. 1987). In short, we must review the record
and ask if a fact finder could rationally reach a different
conclusion from that of the court.
 Because this case rests on diversity jurisdiction, we
must look to Rhode Island law for guidance. Should there be no
statute or case precedent squarely on point, we must look for
analogous situations. If we find no compelling guidance, we may
seek the aid of the Supreme Court of Rhode Island by certifying a
question to it. We are reluctant, however, to impose on another
court at such a late stage in already attenuated proceedings. 
 The only preliminary issue provoking much discussion
from the parties is whether plaintiff preserved the issue of
whether her cancer was part of the initial "single injury" or was
a separate "second injury." Defendants first raise a burden of
proof objection, arguing that plaintiff failed to carry her burden
to establish that her cancer was separate and distinct from her
earlier ailments. If we were to assume that Rhode Island would
adopt the extreme versions of a "single injury" concept, i.e., that
when the initial injury, however slight, is sustained, a cause of
action then accrues for all subsequent consequences, defendants'
point would have more force. But, as we shall discuss, we think
Rhode Island would not apply this principle to cases involving
prolonged smoking and later discovered lung cancer, but, instead,
would apply a discovery rule based on reasonable foreseeability of
the disease from current symptoms. Given that premise, the
question facing us is whether, on motions for summary judgment,
there is enough evidence in the record countering foreseeability to
create a genuine issue of fact. If, of course, there is no such
evidence, then plaintiff would pay the price, having the ultimate
burden of persuasion. See, e.g., Stepanischen v. Merchants
Despatch Transp. Corp., 722 F.2d 922, 929 (lst Cir. 1983). But if
there is such evidence, no matter by whom produced, summary
judgment should not issue.
 Defendants also claim that plaintiff did not properly
raise her separate injury argument in the district court. We trace
briefly this issue's footprints in the record. In response to
defendants' statute of limitations defense in their motions for
summary judgment, plaintiff identified, as one of several issues of
fact, her claim that her lung cancer occurred within three years of
suit stating:
 It is undisputed that Barbara Nicolo
 was diagnosed with lung cancer in
 November, 1993. It is also undisputed
 that for her no prior lung cancer
 awareness existed. This lawsuit arises,
 in part, from Barbara Nicolo's lung
 cancer. The suit was filed on September
 16, 1996, well within the three year
 statutory period from November, 1993. It
 is obvious on the face of these facts that
 Barbara Nicolo's claim for lung cancer is
 not barred by the Statute of Limitations.

 Defendants devoted two-thirds of a fourteen page reply
memorandum to an effort to demonstrate that the "single cause of
action" concept governed the case and that under Rhode Island law,
"once plaintiff knew she suffered `injury' as a result of her
cigarette smoking, the statute of limitations began to run on all
her claims, present and future, and did not begin to run anew every
time she developed further 'injuries' from her smoking."
 Following this, plaintiff directed a supplemental
response to an issue raised by the court, the effect of the 1993
lung cancer diagnosis. She began with the assertion that "clear
questions of fact exists [sic] on whether or not the lung cancer is
a new and medically uncertain occurrence." She went on
"additionally" to make a continuing tort argument.
 Even more important than these exchanges is the fact
that the district court, as our quoted extract from its decision
reveals, fully understood and grappled with plaintiff's theory of
a separate and new cause of action, rejecting it after full
deliberation. This is not the kind of "blindsiding" of the court
that our raise-or-waive stance aims to discourage. See, e.g.,
United States v. Bongiorno, 106 F.3d 1027, 1034 (lst Cir. 1997)
(reciting standard rule that issues not raised squarely in trial
court cannot be advanced on appeal). We have been cited to no case
where we have held that procedural default has occurred on an issue
which has been given focused and central consideration by the
district court.
 We, therefore, conclude that the single vs. separate
injury issue has been preserved.
 B. Accrual of Cancer Cause of Action
 1. Search for a Fair Standard
 In conducting our own analysis, we first observe that
we have been pointed to no Rhode Island jurisprudence involving
latent and delayed cancer resulting from prolonged smoking. We
begin with an analysis that leads us to the conclusion that Rhode
Island would not follow such a draconian "slight injury" concept of
accrual as was reflected in Joyce. 
 It bears noting that, strictly, this proposition is not
disputed. The district court, as we have observed, while
mentioning this concept, did not adopt it as a ground for decision. 
Defendants have similarly refrained from arguing that the earliest
respiratory ailments suffered by plaintiff signaled the accrual of
her cause of action. Indeed, they distinguish both asbestos and
non-asbestos cases cited by plaintiff as involving relatively minor
injuries and argue that by 1989 plaintiff "knew all she needed to
know to bring suit -- that she might have a claim against the
Manufacturers for totally disabling respiratory harm." 
 Nevertheless, the authority of the cases tracing
accrual of all causes to an initial minor injury seems to survive
in some of the argument on appeal. In any event, were such a rule
applied to a latent, long-delayed cancer case, it would place, as
other courts have observed, a victim in an impossible position. If
he did not sue at the earliest onset of breathing difficulty or
emphysema, he would risk being barred from pursuing a remedy for a
cancer condition discovered much later. If, on the other hand, he
brought suit at such an early stage he would not be able to come
forward with the proof of sufficient likelihood of damage from
cancer to sustain his cause of action. As for the courts, such a
rule would unnecessarily thrust them into obviously premature
litigation. As then-Judge Ginsburg wrote in Wilson v. Johns-
Manville Sales Corp., 684 F.2d 111 (D.C. Cir. 1982): "In latent
disease cases, this community interest [in balancing the interests
of the parties and producing a fair resolution] would be
significantly undermined by a judge-made rule that upon
manifestation of any harm, the injured party must then, if ever,
sue for all harms the same exposure may (or may not) occasion some
time in the future." Id. at 119.
 Moreover, a strict initial-though-slight injury rule
would not be consistent with the approach of the Rhode Island
Supreme Court in the discovery rule cases that have been cited. 
For example, in Wilkinson, the court was concerned with the
manifest unfairness of barring "the enforcement of injury claims
brought by a plaintiff who was not, nor could not have known that
he was, the victim of tortious conduct because the consequent harm
was unknowable within two years of the negligent act." Wilkinson,
243 A.2d at 752. In Lee, the court set forth its rationale for a
manifestation of injury rule of accrual saying that "a person
[should] have a reasonable opportunity to become cognizant of an
injury." Lee, 469 F.2d at 361. In Anthony, the court referred to
its "conscious balancing of policies" to prevent "the unexpected
enforcement of stale claims with the opportunity of a person to
have her day in court to vindicate those rights that have been
violated but have remained undiscovered or undiscoverable." 
Anthony, 490 A.2d at 46. 
 We also take note of the willingness of the Supreme
Court of Rhode Island to take a realistic approach to the long-
established rule against splitting causes of action, not hesitating
to carve out situations to which this approach should not apply,
where its invocation would work an injustice. For example, in
Lemieux v. American Universal Insurance Co., 360 A.2d 540 (R.I.
1976), the court, recognizing the disparity of interests of a
subrogated insurer and its insured, permitted each to seek recovery
from a third party in separate suits for property damage and
personal injury. See id. at 545.
 We, therefore, are confident that a Rhode Island court
would not deem cancer to be so foreseeably related to the very
beginning of plaintiff's respiratory difficulties as to identify
that as the time of accrual of her cause of action for cancer. 
Plaintiff argues for setting the time of medical diagnosis of
cancer as the time of accrual. While there may be cases where such
a time would be appropriate, it is also possible in the case of a
long-time addictive smoker that the progression of illnesses, the
presence of symptoms indicative of cancer, the nature of materials
read, or discussions with doctors, etc., so point to the likelihood
of cancer that it is fair to expect a plaintiff to bring suit and
where further delays would impose an untoward burden on a
defendant. 
 It seems to us, as it did to the district court, that
a fair balancing of the legitimate interests of the parties lies in
a middle position that would not allow a plaintiff to sleep on her
rights but would not, in the interests of repose and evidence
preservation, severely jeopardize a plaintiff's opportunity to
obtain compensation for contracting cancer. The district court's
framing of its decision in terms of the ready foreseeability of
cancer from the nature and extent of current disabilities appears
to us consistent with the Rhode Island Supreme Court's emphasis in
Wilkinson and Lee on the unfairness of barring a plaintiff before
he could have become aware of the consequent harm.
 This approach also reflects a sensitive and sensible
balancing of interests. We first note a number of characteristics
of cancer that militate against requiring a possible victim, even
though an addicted smoker, to make an early decision to commence
litigation. The causes of cancer are various, by no means confined
to prolonged smoking. Nor is cancer an inevitable result of such
smoking. Often its incidence defies foreseeability. It is quite
different from afflictions of shortness of breath, emphysema, or
other respiratory difficulties. It is of a different magnitude,
often involving the possibility of death. Unlike impairments to
breathing, cancer does not lend itself to lay identification. It
is most dependent upon medical diagnosis. We can understand the
apparent absence of case authority for this approach.
 We pursue our search for an appropriate balance by
examining the impact on defendants of a middle approach based on
foreseeability. We do not anticipate that this would be an open
sesame for stale claims. A plaintiff with some awareness of her
susceptibility is not likely to sleep on her rights. Moreover,
cancer claims remotely connected in time to earlier illnesses run
greater risks of failure of proof, because of the very multiplicity
of causes of cancer. A defendant is not without weapons to
dismantle a specious claim of ignorance. Particularly, looking to
the future, we strongly suspect that it will not be an onerous
burden on a defendant to prove that a plaintiff was exposed to
enough contemporary information about cancer to have reasonably
foreseen its likelihood. We should add that this case went to
judgment on a sparse record, containing the plaintiff's deposition
and medical records. There was no testimony from other witnesses,
including medical experts. No evidence is in the record as to any
conversations between plaintiff and doctors or others about
suspicion of cancer. 
 In accepting this approach as that which would comport
with Rhode Island law, we realize that it points in the direction
of fact-intensive analysis. By the same token this introduces
unavoidable uncertainty into prediction, litigation, and the
attainment of repose. We have, therefore, probed on our own the
possibility of linking the time of accrual of a cause of action for
cancer to some objectively identifiable stage in the progression of
the illness. For example, one might say that once the condition of
an addictive smoker has regressed to the stage when she is
substantially and permanently disabled, she should be held to know
enough to bring suit for present and any subsequent illnesses
attributable to her smoking.
 On close examination, this approach reveals numerous
flaws of its own. We first observe that even this approach does
not avoid a case by case inquiry into whether the threshold stage
of seriousness has been reached. We then realize that the same
problem of anticipatory litigation presents itself: a plaintiff,
however reluctant to engage in a premature lawsuit, is faced with
a "sue or lose" dilemma before having reliable knowledge of her
likelihood of contracting cancer. Paradoxically, instead of
serving the truth-enhancing, evidence-preserving function of
statutes of limitation, this approach forces resolution before the
development of relevant reliable medical or scientific evidence.
 Even were such a plaintiff able to prove by a
sufficient quantum of evidence the likelihood of incurring cancer,
her damages would be subject to substantial discounting based upon 
a range of contingencies regarding the probability of her
contracting the disease. The plaintiff would also be subjected to
several other burdens. She would be under pressure -- with the
consequent expense -- to search for experts to maximize the
seriousness of her prognosis, as well as pressure to delay the
progress of her suit to take advantage of subsequent deterioration. 
Such a series of disadvantages jeopardizes the societal interest in
affording fair compensation to victims. To the extent that a "sue
or lose" rule based on an arbitrarily defined "stage" results in a
shielding of a tortfeasor, the community interest in deterrence is
also compromised.
 2. Application of Standard
 While we are satisfied that the test both we and the
district court have articulated reflects a fair balancing of
interests, the district court went further, holding that the record
was bereft of any genuine issue of material fact and granted
summary judgment for defendants.
 We acknowledge that there may well be some cases in
which one could say that the reasonable foreseeability of cancer
was not a genuinely disputed fact at a period antedating the 
limitations period. Generally, however, we suspect that the issue
is heavily fact dependent. In this case, on this record, we cannot
say that the known conditions affecting plaintiff in 1989 so
pointed to a likely development of cancer that she should have
brought suit. We rehearse our findings from our scrutiny of the
record.
 We begin by noting that the court, as we have observed,
concluded that by 1989 plaintiff had become totally disabled from
asthma, emphysema, and COPD, all derived from smoking. Defendants
repeatedly assert that by 1989 plaintiff was suffering from totally
disabling smoking-related respiratory disease. As we shall
explain, these statements considerably overstate the record.
 The medical record for 1988 and 1989 is replete with
doctors' examinations, tests, operations, and evaluations. In
April 1988, a myelogram was performed as well as CT scanning by Dr.
Birkenfeld, revealing "severe spinal stenosis" or narrowing of the
space in two lower back vertebrae which allowed spinal nerve
passage. Numbness and pain in both legs, hindering plaintiff's
walking, and bringing her "almost [to] the verge of incapacity,"
had been progressive over the prior three years.
 In May 1988, after being admitted to Carney Hospital
and having a physical examination in which her lungs were found
"clear to auscultation," plaintiff underwent an operation on her
spine -- a lumbar laminectomy, a procedure to remove part of a
blockage in the vertebrae. Significantly, before the operation,
because of her COPD, plaintiff was given a chest x-ray "for
pulmonary clearance" by Dr. Kogianes, which showed only evidence of
COPD and mild artery-associated (atherosclerotic) and/or
hypertensive heart disease. After the operation, and temporary
progress, plaintiff complained again of back and leg pain, but was
sent home under conservative treatment. She was administered a
postoperative chest x-ray, which was "basically within normal
limits."
 Almost a year later, plaintiff filed a claim for Social
Security disability benefits with the State of Rhode Island
Department of Human Services. In support of the claim, plaintiff's 
physician, Dr. Gilman, reported on an examination he had conducted
in January 1989. He reported that plaintiff suffered from the
following conditions: overweight; "[l]ungs revealed a few babesia
crackles [babesia being parasites from ticks, destructive of red
blood cells];" COPD; high cholesterol; numbness in hands and feet;
and pulmonary functions registering from 13 percent to 22 percent
under "predicted." His diagnosis listed COPD in a continued
smoker, hyperlipidemia (excess fat in the blood), a history of
spinal stenosis surgery, and neurological symptoms.
 In July 1989, plaintiff's disability claim was denied
and Dr. Gilman was asked to send a supplementary report in
connection with her request for reconsideration. He was advised by
a lawyer representing her before the Board of Appeals that
plaintiff had indicated to him "that she is unable to stand, sit or
lay in any one position for more than a short period of time, and
that she has severe back problems and other related problems and
that she is not able to do any sort of gainful activity."
 On July 31, 1989, Dr. Gilman reported that plaintiff
had recently complained of a sore throat, coughing, and yellow
sputum. She was found to have pharyngitis, or inflamation of the
pharynx, and was treated with antibiotics. She had been scheduled
for a second laminectomy but an electrocardiogram showed more "T-
wave inversions" than previously observed, and "pulmonary function
tests showed a moderate decrease in flows and volumes." Plaintiff
took a treadmill test and, at a mild work load, had no
abnormalities of concern. She was advised to "decrease her smoking
and discontinue it because of her COPD." Dr. Gilman's "impression"
listed COPD, continued smoker, hyperlipidemia with high
cholesterol, EKG changes, and a history of prolonged back pain.
 From this record, which summarizes all of the medical
history, we discern the following. Both in 1988 and 1989 plaintiff
was suffering from a number of afflictions. A substantial portion
of her ailments were not obviously related to smoking. Plaintiff
was overweight, with excess cholesterol and fat in the blood, and
particularly suffered pain and numbness in her hands, feet, and
lower back, all of which played a significant role in her health
problems. As she is quoted by her lawyer, her inability to pursue
gainful employment was linked in a major way to these latter
problems. Finally, the fact is that plaintiff's disability claim
was disallowed.
 We therefore cannot say that this record justifies
characterizing plaintiff's condition in 1989 as one of total
disability from respiratory ailments attributable to smoking. More
importantly, we do not think that, as a matter of law, on this
record, plaintiff's condition in 1989 so clearly pointed to the
onset of cancer such that a lay person could foresee it as likely. 
Not until the x-ray in November 1993, taken just prior to a planned
surgery, was plaintiff's lung cancer revealed. The record does not
show that this followed a series of conversations with friends or
doctors about the possibility of cancer or of particular books,
articles, or media presentations arousing concern. Nor does cancer
appear to be linked, as a matter of law, to her prior illnesses. 
To the contrary, plaintiff was very much in the hands of several
doctors, being routinely examined, tested, and evaluated. During
the five years prior to her diagnosis her condition was stable. 
Most critically, she had the assurance given by the two chest x-
rays which revealed no hint of cancer. Although we do not pretend
to be expert evaluators of medical evidence, no one has suggested
that these x-rays should not indicate the absence of cancer. At no
time was the possibility of cancer touched upon. On this state of
facts, we cannot say as a matter of law that plaintiff in 1988
"knew all she needed to know" and should have filed suit to recover
damages for lung cancer. In fact, had she attempted to recover for
the likely contraction of cancer at that time, with recent x-rays
showing her lungs to be tumor-free, her chance of success would
have been greatly diminished.
 This record in our view contains sufficient evidence to
defeat summary judgment. While plaintiff has the burden to show
that her suit was timely, see Kelly v. Marcantario, 187 F.3d 192,
198 (lst Cir. 1999) (stating that plaintiff has burden to show that
his claim was filed within statute of limitations due to tolling),
defendants, as the movants for summary judgment, have the burden of
first establishing that there is no genuine dispute as to any
material fact necessary to decision, see Cadle Co. v. Hayes, 116
F.3d 957, 960 (lst Cir. 1997).
 We conclude that at this juncture there is at least a
genuine issue of material fact as to whether plaintiff's condition
immediately before the commencement of the limitations period was
such as to require a person acting with reasonable diligence to
institute suit seeking damages attributable to cancer.
 C. Plaintiff's Remaining Arguments
 Plaintiff seeks to cast a wider net than that
encompassing her cancer. She asserts a congeries of claims under
a section of her complaint entitled "Fraudulent Misrepresentation."
 She argues, first, that defendants' responsibility for
selling her an addictive product and their manipulative conduct
aimed at increasing her addiction are subject to the expanded
discovery principle of Anthony under which a cause of action based
on use of a drug product does not begin to run until after
discovery of both an injury and wrongful conduct of the
manufacturer. See Anthony, 490 A.2d at 46. Wholly apart from
whether Rhode Island would extend this doctrine to cigarette
products, its application to such a case as this would mismatch
rationale and facts. Its premise as plaintiff points out, "is that
a person using a drug product has no reason to suspect from the
fact of an adverse effect or injury that . . . the manufacturer has
done anything wrong." But plaintiff knew well of her addiction and
that it was caused by defendants. That she did not know the degree
of defendants' wrongdoing seems irrelevant. As we said in Kelly,
"[f]or a cause of action to accrue, the entire theory of the case
need not be immediately apparent." Kelly, 187 F.3d at 201.
 Secondly, plaintiff makes a slightly different argument
based on her intentional tort characterization of her nicotine
manipulation claim. Her argument is that this cause of action
arose only when plaintiff discovered the intentional nature of
defendants' conduct. But the same reasoning that defects
plaintiff's claim based on Anthony applies here. She knew her
addiction was attributable to defendants. This alone put her on
inquiry. The same reasoning disposes of her argument that
defendants' fraudulent concealment of their purposeful conduct
tolled the running of the statute.
 Thirdly, she advances a continuing tort argument, that
her cause of action for nicotine manipulation did not accrue until
she stopped smoking. Leaving aside the absence of precedent in
Rhode Island, the dispositive answer is that, given plaintiff's
knowledge that she had been "hooked" since at least the early
1980s, any subsequent dissimulation or misrepresentation by
defendants as to their intent and knowledge bore no causal relation
to plaintiffs' condition.
 Finally, plaintiff does not charge the district court
with any abuse of discretion in refusing to certify questions to
the Supreme Court of Rhode Island but suggests that we ought to
certify the issues of single vs. separate injury, the application
of the Anthony discovery rule, and the application of a continuing
tort theory. At this late date, however, we are disinclined to
delay proceedings further. We prefer to decide the case before us,
leaving for the future the authoritative articulation of the law of
Rhode Island by its Supreme Court.
 We want to underscore that this is a close and
difficult case. The problem of applying statutes of limitations in
exposure cases, where there may be a substantial delay before
symptoms manifest themselves and a series of different symptoms may
emerge at different times, has vexed and divided the state courts. 
Existing statute of limitations doctrine, in the abstract, does not
generally provide clear answers to the peculiar problem presented
by the long-term exposure issue. A sampling of decisions, a number
of them dealing with the problem of asbestos exposure, show that
some courts have reached answers that are as "liberal" to
plaintiffs as our own -- or even more so -- while others are far
less so.
 The latter decisions, like that of the district court,
are primarily motivated by concern about stale claims and liability
continuing almost without limit in time. It is certainly possible
to conclude that a plaintiff who knows of his or her exposure and
also has suffered substantial harm at some other point after the
exposure (e.g., COPD) should then bring suit within the statute of
limitations period following that harm. The biggest problem with
this course is the difficulty of dealing with other potential harms
from the same exposure that have not yet manifested themselves and
may be unlikely on a percentage basis but are very severe if they
occur (e.g., cancer). 
 Nevertheless, lacking clear guidance from the Rhode
Island courts, we have made our best guess based on suggestive
Rhode Island precedents, policy, and the general direction in which
the case law is tending in other states. The district judge who is
more familiar with Rhode Island law has reached a different
conclusion, but we are forbidden by Supreme Court precedent from
giving weight to this view merely because of the judge's residence. 
See Salve Regina College v. Russell, 499 U.S. 225, 238-40 (1991). 
The next time this problem arises, however, the district court may
want to give further thought to certifying the issue to the state
supreme court, assuming the issue is amenable to certification, see
Doe v. Walker, 193 F.3d 42, 45-46 (lst Cir. 1999), and further
assuming that there is no intervening clarification by the Rhode
Island courts of the law in this area.
 The judgment is vacated and the matter remanded to the
district court for further proceedings consistent with this
opinion.